IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 11, 2018 Session

## JAMES CURTIS PIERCE v. HOLLIE MARIE PIERCE (MARSZALEK)

Appeal from the Circuit Court for Shelby County
No. CT-004398-11      Robert S. Weiss, Judge

_____

### No. W2017-02447-COA-R3-CV
_____

In this post-divorce matter, the trial court determined that the father's child support obligation should be increased due to the father's significant increase in income subsequent to the parties' divorce.  In calculating the father's new child support obligation amount, however, the trial court included the children's private school expenses, which the father had previously agreed to bear, as a "work-related childcare" expense for the father on the respective child support worksheet, thereby reducing the father's child support obligation.  The mother has appealed.  We vacate the trial court's modifications to the parties' permanent parenting plan and its calculation of child support, including its inclusion of private school tuition and health insurance premiums paid by a stepparent on the child support worksheet.  We remand the child support issue to the trial court for recalculation of the father's child support obligation consistent with this opinion.  We also vacate the trial court's partial award of attorney's fees to the mother and remand that issue to the trial court for determination of a reasonable award of all attorney's fees incurred by the mother concerning her petition to increase the father's child support obligation.  We affirm the trial court's judgment in all other respects.  In addition, we grant the mother's request for attorney's fees incurred on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Stevan L. Black, Memphis, Tennessee, for the appellant, Hollie Marie Pierce Marszalek.

Rachael E. Putnam, Memphis, Tennessee, for the appellee, James Curtis Pierce.

**OPINION**

I. Factual and Procedural Background

In this child support modification action, the plaintiff, James Curtis Pierce ("Father") and the defendant, Hollie Marie Pierce ("Mother"), were parties in divorce proceedings in 2011 in the Shelby County Circuit Court ("trial court"). The three children born during the marriage were ages nine, five, and three years, respectively, at the time of the divorce decree's entry on January 11, 2012.

In connection with the divorce, the parties entered into an agreed Permanent Parenting Plan ("PPP"), which specified that Mother would be the primary residential parent and that the children would spend 182.5 days of annual co-parenting time with each parent. The PPP also stated that if "Father elects to continue to pay private school tuition for the children to attend Briarcrest for the 2012-2013 school year and thereafter, he shall bear sole financial responsibility for the tuition, uniforms, and other Briarcrest-required expenses for all three (3) children. The parties shall equally divide any tutoring costs for the children." All major decision-making responsibility was designated as "joint," with the qualifying statement that "Father may solely determine whether the children will continue to attend Briarcrest at his cost."

According to the PPP, based on Father's listed gross monthly income of $6,667.00 and Mother's listed gross monthly income of $5,000.00, Father was ordered to pay to Mother $325.00 per month in child support. Mother was designated as the responsible party for maintaining health insurance for the children. On the child support worksheet, Mother's column reflected an expense in the amount of $112.00 as the children's portion of the monthly health insurance premium.

On March 28, 2013, the trial court entered an agreed amendment to the PPP. Although such amendment provided for an alteration of the day-to-day parenting schedule, the overall allotment of days per year for the children to spend with each parent remained unchanged. The amended PPP contained the same provisions concerning the parties' joint decision-making authority regarding educational decisions with the same caveat regarding Father's authority to determine whether to further the children's education at Briarcrest at his cost.

On April 5, 2017, Mother filed a petition seeking to modify Father's child support obligation. Mother asserted that when she had recently received a copy of Father's W-2 statement for 2016, she had learned that his gross annual income had increased to $269,623.00. According to Mother, this resulted in Father's monthly gross income having risen from $6,667.00 to $22,468.00 since the parties' divorce. Mother also

averred that the parties' eldest child, then age fourteen, had expressed the desire to live primarily with Mother, such that this child was only spending every other weekend with Father. As a result, Mother alleged that Father's co-parenting time with the eldest child averaged seventy-eight days annually. Mother further stated that the cost of the children's combined health insurance premium had increased to $158.00 per month.

Mother argued that she had incorporated the above-referenced changes into a new child support worksheet, demonstrating that a significant variance existed between what should be Father's current child support obligation and his previous child support obligation. Mother thus sought an increase in the amount of child support to be paid by Father as well as an award of her attorney's fees incurred. In support, Mother attached a new child support worksheet, reflecting that Father's child support obligation following his increase in income purportedly should be $2,049.00 per month.

On August 29, 2017, Father filed a petition seeking to modify the parties' amended PPP. Father asserted that a substantial and material change in circumstance had occurred in that (1) the children had been attending Briarcrest for a number of years, (2) disruption of their attendance at Briarcrest would detrimentally affect the children's best interest, and (3) it would be "infeasible for Father to continue to be the only parent liable for the costs of said tuition in the event his child support obligation to Mother is raised and [the trial court] does not take into consideration and provide Father a downward deviation for the payment of such tuition and/or modify the Parenting Plan to require Mother to contribute to said costs." Father accordingly sought to modify the PPP to require Mother to be equally obligated to pay the private school tuition and/or to designate a downward deviation in his child support obligation. Father also sought an award of his attorney's fees.

Mother filed a response, stating that she had moved to Collierville following the parties' divorce "so that the parties' children would have the option to attend excellent public schools in the event that Father elected not to continue to pay all of the tuition at Briarcrest." Mother expressed a desire for the children to attend public schools, noting that she had been forced to reduce her work hours with her employer because she was required to provide all transportation to and from Briarcrest, resulting in a decrease in her income. Father likewise filed a response to Mother's petition to increase child support, claiming that he earned a base salary of only $93,000.00 per year and that his income would fluctuate from year to year.

The trial court conducted a hearing on the respective petitions on September 14, 2017, and considered testimony solely from the parties. The court subsequently entered a written order on November 17, 2017. Considering the proof presented, the court concluded that a significant variance existed between the amount of child support Father

had been paying and the amount of child support Father would be obligated to pay based on his higher income. The court found that Mother's average monthly gross income for 2015 and 2016 was $6,464.00. The court imputed income to Mother based on its finding that Mother was currently willfully underemployed. In support of its imputation of income to Mother, the court noted Mother's testimony that she received Father's W-2 statement in February 2017, decided to transition from full-time to part-time employment in March 2017, and filed her petition to increase child support in April 2017.

The trial court also considered Father's income for 2015 and 2016, finding that his average monthly gross income was $20,606.00. The court ruled that Father would not be allowed to deduct from his gross income the capital investment he made when he purchased an ownership interest in the architecture firm with which he was employed. The trial court noted that although the two younger children were spending equal co-parenting time with each parent, the eldest child was only sharing alternating weekends with Father. The court thus determined that Father was exercising 105 days of annual co-parenting time with the eldest child.

Concerning the calculation of child support, the trial court found that Mother's husband was paying for the children's health insurance, thus crediting Mother's column on the child support worksheet in the amount of $201.00 per month for such health insurance expense. The court also found that because the children had always attended Briarcrest and because it was not in the children's best interest to change from Briarcrest to public school, the court would credit the Briarcrest cost of $2,041.00 per month to Father's column as a "work-related childcare" expense, despite the PPP's provision stating that such cost would be borne solely by Father. The court accordingly determined Father's child support obligation to be $1,265.00 per month. The court further ordered Father to pay a portion of Mother's attorney's fees in the amount of $2,500.00. Mother timely appealed.

## II. Issues Presented

Mother presents the following issues for our review, which we have restated slightly:

1.      Whether the trial court erred by including the amount paid for private school tuition as a "work-related childcare" expense in Father's column on the child support worksheet, thereby reducing Father's child support obligation by apportioning this expense between the parties.

2.      Whether the trial court erred by apportioning the Briarcrest expense between the parties, thereby effectively modifying the parties' agreed PPP related to joint educational decisions and Father's responsibility for payment of all private school tuition and expenses, without finding a substantial and material change in circumstance.

3.      Whether the trial court erred by declining to require Father to pay the entire amount of Mother's attorney's fees and expenses.

4.      Whether Father should be ordered to pay Mother's attorney's fees and expenses incurred on appeal.

Father raises the following additional issue, which we have also restated slightly:

5.      Whether the trial court erred by including the monthly cost of the children's portion of the health insurance premium in Mother's column on the child support worksheet when such expense was paid by Mother's current husband rather than Mother.

## III. Standard of Review

We review a non-jury case *de novo* upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). We review questions of law *de novo* with no presumption of correctness. *See Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

Determinations regarding child support are reviewed under an abuse of discretion standard. *See Mayfield v. Mayfield*, 395 S.W.3d 108, 114-15 (Tenn. 2012); *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). As this Court has explained:

Prior to the adoption of the Child Support Guidelines, trial courts had wide discretion in matters relating to child custody and support. *Hopkins v. Hopkins*, 152 S.W.3d 447, 452 (Tenn. 2004) (Barker, J.,

5

dissenting). Their discretion was guided only by broad equitable principles and rules which took into consideration the condition and means of each parent. *Brooks v. Brooks*, 166 Tenn. 255, 257, 61 S.W.2d 654, 654 (1933). However, the adoption of the Child Support Guidelines has limited the courts' discretion substantially, and decisions regarding child support must be made within the strictures of the Child Support Guidelines. *Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000); *Jones v. Jones*, 930 S.W.2d 541, 545 (Tenn. 1996); *Smith v. Smith*, 165 S.W.3d 279, 282 (Tenn. Ct. App. 2004).

* * *

Because child support decisions retain an element of discretion, we review them using the deferential "abuse of discretion" standard. This standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999). Appellate courts do not have the latitude to substitute their discretion for that of the trial court. *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). Thus, a trial court's discretionary decision will be upheld as long as it is not clearly unreasonable, *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001), and reasonable minds can disagree about its correctness. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000). Discretionary decisions must, however, take the applicable law and the relevant facts into account. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). Accordingly, a trial court will be found to have "abused its discretion" when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003); *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999).

*Richardson*, 189 S.W.3d at 725.

Regarding adherence to the Child Support Guidelines, this Court has explained:

In Tennessee, awards of child support are governed by the Child Support Guidelines ("the Guidelines") promulgated by the Tennessee Department of Human Services Child Support Services Division. Tenn. Code Ann. § 36-5-101(e)(2). Tennessee's Child Support Guidelines have the force of law. *Jahn v. Jahn,* 932 S.W.2d 939, 943 (Tenn. Ct. App. 1996). Statutes and regulations pertaining to child support are intended to "assure that children receive support reasonably consistent with their parent or parents' financial resources." *State ex rel. Vaughn v. Kaatrude,* 21 S.W.3d 244, 248-49 (Tenn. Ct. App. 2000); *see also* Tenn. Comp. R. & Regs. 1240-02-04-.01(3)(e). Courts are therefore required to use the child support guidelines "to promote both efficient child support proceedings and dependable, consistent child support awards." *Kaatrude,* 21 S.W.3d at 249; *see also* Tenn. Code Ann. § 36-5-101(e); Tenn. Comp. R. & Regs. 1240-02-04-.01(3)(b), (c).

*Sykes v. Sykes*, No. M2012-01146-COA-R3-CV, 2013 WL 4714369, at *2 (Tenn. Ct. App. Aug. 28, 2013) (footnote omitted).

## IV. Private School Expense and Interpretation of the PPP

Mother asserts that the trial court erred by including the amount Father paid for private school tuition as a "work-related childcare" expense in Father's column on the respective child support worksheet. Mother argues that by doing so, the trial court incorrectly reduced Father's child support obligation by effectively apportioning this expense between the parties, when Father had previously agreed that the expense would be borne solely by him. Mother also contends that by ordering that the children would remain at Briarcrest and apportioning the private school expense between the parties, the trial court improperly modified the provisions of the parties' PPP related to joint educational decisions and Father's responsibility for payment of all private school expense without a showing of a substantial and material change in circumstance.

The parties' original agreed PPP, entered in 2012, expressly provided that if "Father elects to continue to pay private school tuition for the children to attend Briarcrest . . . he shall bear sole financial responsibility for the tuition, uniforms, and other Briarcrest-required expenses for all three (3) children. The parties shall equally divide any tutoring costs for the children." The parties designated all major decision-making responsibility as "joint," with the exception that "Father may solely determine whether the children will continue to attend Briarcrest at his cost." On March 28, 2013, the trial court entered an agreed amendment to the PPP regarding the residential co-parenting schedule. However, the amended PPP still provided that the parties would have joint decision-making power concerning educational decisions with the same caveat

regarding Father's decision-making authority to continue their education at Briarcrest <u>at his cost</u>.

During trial, Mother testified that the parties' three daughters, by then ages fourteen years, eleven years, and nine years respectively, had been attending Briarcrest for the entirety of their school careers. Mother explained that Father desired for the children to attend Briarcrest because he was an alumnus of the school and also because his Father and Mother had both been employed there. Mother, who described herself as a proponent of public school education, stated that she did not object to the children attending Briarcrest so long as Father paid the expenses related thereto. Mother also noted that pursuant to the parties' PPP, Father had always had the option of allowing the children to attend public schools if he did not wish to pay for Briarcrest.

According to Mother, she moved to Collierville following the divorce so that the children would reside in a "good school district" in case Father determined that he no longer wanted to pay for their education at Briarcrest. Mother explained that the schools for which her home was zoned were in the top twenty schools in Tennessee, and she opined that the children would receive a quality education at these public schools. Mother also testified that the children had friends who attended the public schools in their school zone.

On cross-examination, Mother acknowledged that the parties' eldest child had attended Briarcrest for ten years while the middle and youngest children had been in attendance for six and four years respectively. Mother recognized that the children had performed well at Briarcrest and were involved in extracurricular activities there. Mother opined that if the children transferred to public schools, they would be upset for a period but should adapt well. Mother related that she also preferred for the children to attend public schools because she would no longer be responsible for all associated transportation.

When pressed regarding the issue of the children's attendance at Briarcrest, Mother responded as follows:

| Father's Counsel: | Do you have an opinion as to whether you believe it would be in the best interest of the children to remain at Briarcrest? |
|---|---|
| Mother: | I think the children would adapt very well at a public school in our area where they have friends going to school. |

Father's Counsel:  And I appreciate that, that you think they would adapt well, but what I'm asking you is if you were asked what would be in their best interest, to remain at Briarcrest or to leave, and you had the option of choosing, what do you think would be in their best interest?

Mother:  I'm not opposed to the children going to Briarcrest if their father is willing to continue paying for it.

Father's Counsel:  Do you think that would be in the best interest?

Mother:  Yes. I mean, I think it – if we could continue at this, it would be okay.

Father testified that at the time of the parties' divorce, the two older children had been attending Briarcrest since the beginning of their school careers. Father explained that his father, the children's paternal grandfather, had been employed at Briarcrest for thirty-seven years and that by reason of this, Father received a discount on tuition for the children through their sixth-grade years. Father acknowledged that he was currently paying approximately $28,500.00 per year for the children to attend Briarcrest. According to Father, the children were happy at Briarcrest and performed well academically. He testified that they were also involved in activities there and enjoyed many friends.

Father opined that it would be detrimental to remove the children from Briarcrest and enroll them in public schools because they would be "devastated." Father explained that he had paid all of the Briarcrest expenses, including tuition, uniform costs, and books, although he and Mother had split expenses for tutoring and extracurricular activities. Furthermore, Father had offered to assist Mother with transporting the children to and from school.

Following the close of proof, the trial court took the matter under advisement and subsequently reconvened the hearing on September 18, 2017, for the announcement of its factual findings and conclusions. Concerning the children's attendance at Briarcrest and the expenses related thereto, the trial court stated:

With regard to the private school, in the original divorce, father agreed to -- that he had the final decision-making as far as educational decisions. And it was his decision that the children would remain at Briarcrest as long as he decided to pay for it. And he'll continue to be

responsible for that. However, the testimony was clear that the parties and the children have always attended Briarcrest. While I understand mom's position that, oh, they'd be -- they would adjust and they would be fine, if they went to public school, I don't know that either one of you -- if money was not an – wasn't – wasn't an issue at all, that there would be anyone to say that it would be in the children -- in the children's best interest to make that switch.

So what I'm going to do is, I've put in the $2,401.86 into the child support worksheet as work-related child care, and that gave an adjustment of about -- of the child support. So the father's presumptive child support obligation will be $1,265 per month and be responsible for the Briar[crest] school tuition.

In its resulting November 17, 2017 order, the trial court expressly found that "Father had final decision-making authority as far as education decisions," despite the provision of the PPP designating all major decision-making responsibility as "joint," with the exception that "Father may solely determine whether the children will continue to attend Briarcrest at his cost." The court further determined:

Father shall continue to be responsible for the children's private school tuition at Briarcrest;

The children have always attended Briarcrest;

While Mother testified that the children would adjust and be fine in public school, the Court does not believe that either of the parents would say that it would be in the children's best interests to make the change from Briarcrest to public school;

The Court, in completing the child support worksheet, has placed in Father's column as "work related childcare" the sum of $2,041.00, as Father shall continue to be responsible for making the payment; and

Father's resulting presumptive child support obligation shall be $1,265 per month, which shall be retroactive to April 2017 when Mother filed her Petition to Modify Child Support . . . . Thus, the Court grants Father's Petition to Modify the Permanent Parenting Plan insofar as Father sought to have Mother pay a pro rata share of the children's private school tuition at Briarcrest.

(Paragraph lettering omitted.)

Mother argues on appeal that the trial court's inclusion of the Briarcrest tuition as a "work-related childcare expense" in Father's column on the child support worksheet had the effect of apportioning this expense between the parties and inappropriately reducing Father's presumptive child support amount. Mother further argues that the trial court's action resulted in an improper modification of the provisions of the parties' PPP related to joint educational decisions and Father's responsibility for payment of all private school expenses without a showing of a substantial and material change in circumstance. We agree with Mother.

In its written order dated November 17, 2017, the trial court expressly found that Father "had final decision-making authority as far as education decisions." In granting Father's petition to modify the PPP, the court stated that it was only modifying the PPP "insofar as Father sought to have Mother pay a pro rata share of the children's private school tuition at Briarcrest." Therefore, despite the PPP's express provision stating that the parties would have joint decision-making authority with regard to the children's education unless "Father elect[ed] to continue to pay private school tuition for the children to attend Briarcrest," for which "he shall bear sole financial responsibility for the tuition, uniforms, and other Briarcrest-required expenses for all three (3) children," the court ordered that the children would remain in attendance at Briarcrest, without regard to Mother's assent or dissent, and that Mother would pay a share of the attendant cost.

We note that an agreed permanent parenting plan should be interpreted as any other agreement. *See, e.g., Sharp v. Stevenson*, No. W2009-00096-COA-R3-CV, 2010 WL 786006, at *6 (Tenn. Ct. App. Mar. 10, 2010) (explaining that parenting plans should be interpreted as binding agreements between two parents). *See also Howard v. Halford*, No. E2014-00002-COA-R3-JV, 2014 WL 7263580, at *3 (Tenn. Ct. App. Dec. 22, 2014) ("The parties' intent as to their [parenting plan] agreement should be considered as it was at the time the trial court entered the agreed order."). We review the trial court's interpretation of a written agreement *de novo* with no presumption of correctness. *See Ray Bell Constr. Co., Inc. v. State, Tenn. Dep't of Transp.*, 356 S.W.3d 384, 386 (Tenn. 2011); *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009). As this Court has previously explained:

> In resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002) (citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). A determination of the intention of the parties "is generally treated as a

question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." *Planters Gin Co.*, 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30 (rev. ed. 1998); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. *Planters Gin Co.*, 78 S.W.3d at 890. The parties' intent is presumed to be that specifically expressed in the body of the contract. "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." *Id.* (quoting 17 Am. Jur. 2d, Contracts, § 245).

*Kafozi v. Windward Cove, LLC*, 184 S.W.3d 693, 698 (Tenn. Ct. App. 2005), *perm. app. denied* (Tenn. Jan. 30, 2006).

Following our thorough review of the parties' PPP, we determine that the trial court erroneously interpreted the PPP's provisions as affording Father "final decision-making authority as far as education decisions." To interpret the PPP in such a fashion ignores the PPP's express provision granting joint decision-making authority to the parents regarding education. An asterisk beside the joint designation concerning educational decisions directs the reader to a provision stating: "Except that Father may solely determine whether the children will continue to attend Briarcrest <u>at his cost</u>" (emphasis added). A separate provision in the PPP explains: "If Father elects to continue to pay private school tuition for the children to attend Briarcrest . . . he shall bear the sole financial responsibility for the tuition, uniforms, and other Briarcrest-required expenses for all three (3) children." Ergo, by ordering that the children continue to attend Briarcrest and also requiring that the parties share in the costs of such enrollment, the court effectively modified the parties' agreed PPP regarding educational decision-making authority as well as private school tuition expense without making any determination that a substantial and material change in circumstance had occurred warranting such modification.

As this Court has previously explained:

A modification in decision-making authority is analyzed utilizing the same standards governing any modification of the parenting plan. *See Gider v. Hubbell*, No. M2016-00032-COA-R3-JV, 2017 WL 1178260, at *5 (Tenn. Ct. App. Mar. 29, 2017) (citing *Colley v. Colley*, No. M2014-02495-COA-R3-CV, 2016 WL 3633376, at *10 (Tenn. Ct. App. June 28,

2016), *perm. app. denied* (Tenn. Nov. 17, 2016) (analyzing a parent's request for sole decision-making authority under the material change analysis)).

*Brunetz v. Brunetz*, No. E2017-01391-COA-R3-CV, 2018 WL 4521023, at *8 (Tenn. Ct. App. Sept. 20, 2018). *See also Hansen v. Hansen*, No. M2008-02378-COA-R3-CV, 2009 WL 3230984, at *2 (Tenn. Ct. App. Oct. 7, 2009) (explaining that modification of decision-making authority in a parenting plan requires demonstration of a material change in circumstance).

In the case at bar, the trial court made no finding that a material change in circumstance had occurred since entry of the agreed PPP so as to warrant a change in educational decision-making authority. The court also made no determination that a material change in circumstance had occurred necessitating a change in the allocation of private school costs, especially in light of Father's substantial increase in income. Because the trial court failed to make this threshold determination before modifying the parties' PPP, we must vacate the resulting modifications. *See, e.g.*, *Mulkey v. Mulkey*, No. E2004-00590-COA-R3-CV, 2004 WL 2412610, at *5 (Tenn. Ct. App. Oct. 28, 2004).

Although Father contends on appeal that the trial court's finding of a material change in circumstance was somehow implicit in its decision to modify Father's child support obligation, we disagree with this contention. A material change in circumstance necessarily implicates consideration of the children's best interest. *See* Tenn. Code Ann. § 36-6-101(a)(2)(B)-(C). The Tennessee Child Support Guidelines and accompanying worksheet are "predicated on the concept that the child[ren] should receive support at the same level that the child[ren] would receive if the parents were living together." *See* Tenn. Comp. R. & Regs. 1240-02-04-.03. One of the stated "major goals" in the development of the Guidelines was to "[e]nsure that, when parents live separately, the economic impact on the child is minimized, and, to the extent that either parent enjoys a higher standard of living, the child shares in that higher standard." *See* Tenn. Comp. R. & Regs. 1240-02-04-.01. Considering these concepts, it does not follow that an obligor parent's increased income, warranting an upward modification of child support, would result in a material change of circumstance affecting the best interest of the children in such a way as to establish an increased burden on the primary residential parent.

Inasmuch as the trial court failed to make the requisite finding that a material change in circumstance had occurred warranting modification of the parties' PPP, we vacate the resultant modification ordering that the children continue in attendance at Briarcrest despite Mother's objection and the court's allocation of a *pro rata* share of the Briarcrest tuition costs to Mother. We conclude that the parties' PPP should be enforced

13

as written, such that Father may continue with the children's enrollment in Briarcrest so long as he agrees to be solely responsible for the costs related to same. If Father does not wish to pay for the children to remain enrolled at Briarcrest, the parties should jointly determine where the children will attend school in accordance with the PPP's provisions.

Because the trial court erred by apportioning the private school expenses between the parties via the child support worksheet, we vacate the trial court's child support award and remand the issue of child support to the trial court for a proper determination. We note that neither party has appealed (1) the trial court's findings regarding the parties' respective incomes or (2) the trial court's allocation of annual co-parenting days concerning the parties' eldest child. We therefore affirm those decisions. Upon remand, the trial court should remove the Briarcrest tuition amount, erroneously denominated as a work-related childcare expense for Father, from the worksheet when recalculating Father's child support obligation.[1] The resulting child support award should be entered retroactive to April 5, 2017, the date of filing of Mother's petition to increase child support.

## V. Health Insurance Premiums

Also concerning child support, Father postulates that the trial court erred by including the monthly health insurance premium for the children as an expense paid by Mother on the child support worksheet, when the evidence demonstrated that Mother's husband was paying the monthly premiums. Upon careful review, we agree with Father on this issue.

During trial, Mother testified that at the time of the parties' divorce, she was paying $112.00 per month for the children's health insurance premium, which expense was included in Mother's column on the child support worksheet such that Father paid a *pro rata* share of each premium. Mother explained that following her remarriage in 2016, she enrolled the children with the health insurance plan provided by her husband's employer because "[i]t was simpler to have everyone on the same plan and it was a comparable health insurance to what we've had." According to Mother, the total

---

[1] We note that even had the trial court found a material change in circumstance warranting modification of the parties' PPP, the Briarcrest tuition would not be properly included on the child support worksheet as "Work-Related Childcare Costs." *See Lubell v. Lubell*, No. E2014-01269-COA-R3-CV, 2015 WL 7068559, at *21 (Tenn. Ct. App. Nov. 12, 2015) (determining that the trial court erred by inappropriately entering the private school tuition on the child support worksheet as an adjustment to Husband's gross income by denominating it as a "work-related childcare expense"). The Guidelines specifically define work-related childcare costs as "expenses for the care of the child for whom support is being determined which are due to employment of either parent or non-parent caretaker." *See* Tenn. Comp. R. & Regs. 1240-02-04-.02. Payment of private school tuition for school-age children clearly does not meet this definition.

monthly premium for seven people was $468.00 per month, which amounted to $66.86 per person or $200.57 total for all three of the parties' children. Mother related that although the premiums had been paid by her husband, presumably via payroll deduction, she intended to fully reimburse him for the cost of the children's premiums once the child support award was increased. As Mother explained, she had been unable to reimburse her husband to date because the insurance payment of $200.57 would have consumed most of her monthly child support payment of $325.00.

In calculating child support, the trial court included the expense for the children's health insurance premiums in Mother's column on the child support worksheet, thus charging Father with a *pro rata* share of said premiums. In doing so, the trial court explained that "[M]other had the ability to have an individual policy. And most likely, it would have been more expensive to cover three children, and it would be a greater expense and a greater percentage to [F]ather. So I'm not going to punish her for that."

Our review of the Tennessee Child Support Guidelines reveals that in the section concerning calculation of child support awards, there exists a subsection entitled, "Adjustments for Additional Expenses." *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(8). The provisions in this subsection offer instructions for adjusting the child support award based on the inclusion of additional expenses, including health insurance premiums and work-related childcare costs. This subsection expressly states that "additional expenses for the child's health/dental insurance premium, recurring uninsured medical expenses, and work-related childcare shall be included in the calculations to determine child support," and should be "divided between the parents pro rata based upon the [percentage of income] of each parent to determine the total Presumptive Child Support Order and shall be included in the written order of the tribunal together with the amount of the [basic child support obligation]." *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(8)(a)(1), (3). This subsection also expressly states, however, that "[a]mounts paid by a step-parent shall not be considered in the calculation." *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(8)(a)(6). *See also Lanier v. Lanier*, No. M2014-02293-COA-R3-CV, 2016 WL 7176980, at *14-15 (Tenn. Ct. App. Dec. 9, 2016) (affirming the trial court's decision to exclude payments made by a stepmother for the children's insurance from the child support worksheet despite the father's assertion that he had repaid the stepmother).

In the case at bar, we determine that the trial court erred by including the health insurance premiums paid by the children's stepfather on the child support worksheet. *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(8)(a)(6) ("Amounts paid by a step-parent shall not be considered in the calculation."). "[A] trial court will be found to have 'abused its discretion' when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *See Richardson*, 189

S.W.3d at 725. The trial court herein applied an incorrect legal standard by failing to follow the express language of the guidelines. *See Sykes*, 2013 WL 4714369, at \*2 ("Courts are therefore required to use the child support guidelines 'to promote both efficient child support proceedings and dependable, consistent child support awards.'" (quoting *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000))). We therefore vacate the trial court's decision to include the monthly health insurance premium as an expense in Mother's column on the child support worksheet.

## VI. Attorney's Fee Awards

Mother asserts that the trial court erred by awarding her only a portion of her attorney's fees, specifically $2,500.00, when her total fees incurred in pursuing modification of Father's child support obligation exceeded $10,000.00. Mother further contends that she should be awarded her attorney's fees incurred in pursuing this appeal. We will address each of these arguments in turn.

## A. Attorney's Fees at Trial

As Mother points out, Tennessee Code Annotated § 36-5-103(c) (2017) provides that the "plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support . . . ." This statutory provision has been interpreted as authorizing a trial court to award attorney's fees incurred in an action to increase child support. *See Wiser v. Wiser*, 339 S.W.3d 1, 20 (Tenn. Ct. App. 2010); *Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001) (interpreting the statute as giving courts authority to award fees in child support modification cases generally); *Williams v. Williams*, No. E2004-00423-COA-R3-CV, 2005 WL 1219955, at \*9 (Tenn. Ct. App. May 24, 2005) (concluding that the parent who successfully sought an increase in child support "was entitled to recover such reasonable attorney fees as were fixed and allowed by the Trial Court in its discretion"). Such an award of attorney's fees is within the trial court's discretion. *See Huntley*, 61 S.W.3d at 341. As our Supreme Court has explained:

> Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

16

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (internal citations omitted).

In this action, Mother testified that by the time of trial, she had incurred attorney's fees and expenses in the total amount of $10,655.88 in pursuing an increase in Father's child support obligation. Mother's counsel filed an affidavit supporting this amount, which contained an itemized accounting of time and expenses. Father presented no proof that the fees incurred by Mother were unreasonable; Father's counsel simply argued that each party should pay his or her own fees. Although the trial court awarded to Mother an increase in Father's child support obligation, the trial court, without explanation, awarded to Mother only $2,500.00 toward her total fees incurred.

With respect to awards of attorney's fees in cases wherein a parent has sought a modification of child support, this Court has explained:

> "In cases involving the . . . support of children, . . . it has long been the rule in this State that counsel fees incurred on behalf of minors may be recovered when shown to be reasonable and appropriate." *Deas v. Deas*, 774 S.W.2d 167, 169 (Tenn. 1989). The *Deas* Court stated: "There is no absolute right to such fees, but their award in . . . [child] support proceedings is familiar and almost commonplace." *Id.* at 170; *accord Taylor v. Fezell*, 158 S.W.3d 352, 360 (Tenn. 2005) (quoting *Deas*). This Court has explained "that the award of fees is for the benefit of the child and is a necessary part of, or inseparable from, the child's right to support." *Evans* [*v. Evans*], [No. M2002-02947-COA-R3-CV,] 2004 WL 1882586, at *12 [(Tenn. Ct. App. Aug. 23, 2004)]. "[F]ee awards in child support cases . . . protect the child's, not the parent's, interests and remedies." *Id.* (citation omitted).

*Wiser*, 339 S.W.3d at 21 (determining that "the trial court's failure to award attorney fees to Wife in connection with her [successful] request for a modification of Husband's child support was an abuse of discretion," where the father enjoyed a significant increase in income but failed to voluntarily increase his child support obligation).

Similarly, here, Father enjoyed a significant increase in income for approximately two and one-half years before Mother became aware of the change and sought a modification of Father's child support obligation. Mother prevailed in her efforts at the trial court level to demonstrate that a significant variance existed warranting an increase in Father's child support obligation. Therefore, pursuant to Tennessee Code Annotated § 36-5-103(c), the trial court erred in failing to award Mother the full measure of her reasonable attorney's fees incurred in seeking to protect the children's interests. *See*

*Wiser*, 339 S.W.3d at 21. We conclude that the trial court's award of $2,500.00 should be vacated and that upon remand, the trial court should enter an award of attorney's fees to Mother for all reasonable fees she incurred at the trial court level while successfully petitioning for an increase in Father's child support obligation.

## B. Attorney's Fees on Appeal

Mother further argues that she should be granted an award of her reasonable attorney's fees incurred in pursuing this appeal concerning Father's child support obligation. Such awards are also within this Court's discretion pursuant to Tennessee Code Annotated § 36-5-103(c). *See Pippin v. Pippin*, 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008). Because Mother has prevailed in her issues on appeal concerning the payment of private school tuition and Father's child support obligation, we conclude, in our discretion, that this is an appropriate case for an award to Mother of attorney's fees incurred on appeal.[2] *See Ragan v. Ragan*, 858 S.W.2d 332, 334 (Tenn. Ct. App. 1993) ("The allowance of attorney's fees for appealing this [child support] case is for the benefit of the child, and the custodial spouse should not have to bear the expense incurred on the child's behalf."). Accordingly, we remand this issue to the trial court for a determination of the amount of reasonable attorney's fees Mother incurred on appeal and entry of an appropriate award in her favor.

## VII. Conclusion

For the foregoing reasons, we vacate the trial court's modifications to the parties' PPP and its calculation of child support, including its inclusion of private school tuition and health insurance premiums paid by a stepparent on the child support worksheet. We remand the child support issue to the trial court for recalculation of Father's child support obligation consistent with this opinion. We also vacate the trial court's partial award of attorney's fees to Mother, and we remand that issue to the trial court for determination of a reasonable award of attorney's fees incurred at trial and on appeal consistent with this opinion. We affirm the trial court's judgment in all other respects. Costs on appeal are assessed to the appellee, James Curtis Pierce.

_____
THOMAS R. FRIERSON, II, JUDGE

---

[2] We note that although Father prevailed on his sole issue regarding the health insurance premiums, this does not preclude a discretionary award of attorney's fees to Mother for pursuing an increase in child support that inured to the benefit of the children.